## Gamble v. Hollenbach.

(Decided June 18, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Sales—Sale of Bonds with Coupons Attached—When Title to Coupons Passes.—In the absence of a contrary provision in the contract, the title to coupons not overdue and attached to bonds will pass when the title to the bonds passes.

2. Contracts—Contract for Sale of Bonds—Construction—Passing of Title.—A contract for a sale of bonds construed and held that the title to the bonds and to the coupons that were attached and not past due passed to the purchaser when the contract took effect.

B. F. WASHER and J. WHEELER CAMPBELL for appellant.

AUGUSTUS E. WILLSON and RICHARD P. DIETZMAN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Philip Hollenbach, brought suit against James E. Gamble to recover the sum of $3,030.00, claimed to be due on account of Gamble's failure to deliver to plaintiff coupons in that amount which were attached to certain second mortgage bonds of the Watterson Realty Company, which plaintiff purchased from Hollenbach. From a judgment in favor of plaintiff, defendant appeals.

The Watterson Realty Company owned the Watterson Hotel in the city of Louisville, and its capital stock consisted of $250,000.00 preferred and $250,000.00 common. $5,000.00 of preferred stock was owned by John C. Lewis, while the remainder of the stock, both common and preferred, was owned in equal portions by Gamble and Sam P. Jones. The Watterson Realty Company also had outstanding $225,000.00 of first mortgage bonds and $325,000.00 of second mortgage bonds. Gamble owned $190,000.00 of second mortgage bonds.

Negotiations were had which resulted in the execution of a written contract on April 28, 1913, by which Gamble contracted to sell to Hollenbach one-half of the issue of common stock and one-half of the issue of preferred stock, except the $5,000.00 of preferred stock owned by

Lewis, and one-half of all the second mortgage bonds held by Gamble. As consideration for the agreement, Hollenbach agreed to pay to Jones, at the request of Gamble, $12,000.00 in cash and $6,000.00 in six months, for which a note was to be executed bearing six per cent interest from date. Hollenbach was also to pay Gamble the sum of $10,000.00 in cash on or before May 10, 1913, $10,000.00 on or before October 10, 1913, $10,000.00 on or before November 10, 1913, $10,000.00 on or before December 10, 1913, $25,000.00 on or before January 10, 1914, and $30,000.00 on January 10, 1915. None of these notes were to bear interest except the note for $30,000.00, which bore interest from January 10, 1914. The following is a specimen of the notes executed by Hollenbach:

"$10,000.00                    Louisville, Ky., Apr. 30, 1913.

On or before October 10, 1913, I promise to pay to the order of James E. Gamble,

Ten thousand ................................................................no/100 dollars.

at 528 West Main street.

Upon payment of this note by Phil Hollenbach Mr. James E. Gamble is to turn over to said Phil Hollenbach the same amount in bonds (second mortgage bonds of the Watterson Realty Co.), value received.

(Signed) PHIL HOLLENBACH."

There were ninety-five $1,000.00 bonds covered by the contract, and attached to each were semi-annual coupons for $30.00 each, which were payable on May 16th and November 16th of each year, and in order that he might be bound, Jones was a party to and signed the contract.

On May 16, 1913, a few days after the contract was executed, Gamble detached from the bonds ninety coupons for $30.00 each and cashed them. The coupons on the remaining five bonds were not cashed, as these bonds had been deposited by Gamble as a pledge for the performance of his contract, and not being in Gamble's possession he was unable to detach the coupons. Eleven other coupons were also detached from the bonds and it is claimed by Hollenbach that these were never delivered by Gamble.

The question is, who was entitled to the coupons, Hollenbach or Gamble? The evidence and conduct of the parties throw but little light upon the question.

Hollenbach says that he purchased the bonds with the coupons attached, and did not agree that Gamble should have the coupons in consideration of his (Hollenbach's) not being required to pay interest on the purchase money notes. He further says that he did not notice that the coupons had been clipped from the bonds that were delivered, and only ascertained this fact when his attention was called to the matter by his son during the fall of 1913. He then discussed the matter with Gamble and demanded the coupons. On the other hand, Gamble delivered $5,000.00 of bonds from which he did not detach the coupons because, he claims, they were in the possession of Hollenbach when they became due. He says that Hollenbach examined the bonds when delivered and knew that the coupons had been detached. However, he admits that in December, 1913, Hollenbach demanded the coupons, and stated that he would not pay the notes unless the coupons were surrendered. It will thus be seen that the conduct of the parties is by no means consistent with either theory of the contract, and therefore cannot be regarded as of controlling effect. That being true, we must resort to the contract itself. The question is, when did the sale take place? If the sale took place when the contract became effective, then the title to the bonds passed to Hollenbach, and there being no contrary provision in the contract, the title to the coupons, which were a part of the bonds, also passed to him. On the other hand, if the sale did not take place when the contract took effect, but was to become effective only when the bonds were delivered and paid for, then the title to the coupons did not pass to Hollenbach but remained in Gamble. The first clause of the contract begins as follows: "The said Gamble will sell and deliver to said Hollenbach all and each of the following amounts of the capital stock, both common and preferred, and the second mortgage bonds of the Watterson Realty Company, etc." Clause 3 is in part as follows:

"It is agreed between the parties that all of the common stock and all of the preferred stock, except the $5,000.00 owned by John C. Lewis, in other words, all of the stock, common and preferred and second mortgage bonds which are to be sold to Hollenbach, and all of said Gamble's stock and second mortgage bonds, are to be deposited with the Fidelity & Columbia Trust Company, as trustee before any payment shall be made on said

stock and bonds, to be held as security for the fulfillment of said Gamble's agreement to sell and deliver the same and shall be delivered as paid for in accordance with this agreement.''

Clause 5 provides: ''Said Hollenbach will pay the $12,000.00 cash and make and deliver the $6,000.00 note, payable in six months, with interest at six per cent, to Sam Jones as soon as everything hereby contracted for is turned over to his satisfaction.'' Clause 6, after setting forth the payments to be made by Hollenbach, provides:

''Said Hollenbach further agrees to execute and deliver to said Gamble notes for the above mentioned payments and also to make and deliver to said Gamble a note for $30,000.00 payable on January 10th, 1915, with interest at the rate of six per cent per annum from January 10th, 1914, no interest to be paid on any note or notes except the one to Jones, up to January 10th, 1914. The notes are to be plain promissory notes. Said Hollenbach agrees that all the bonds and stocks sold to him shall be deposited with the Fidelity and Columbia Trust Company as collateral to secure the said payments heretofore agreed to be made by him, but to be delivered from time to time in the proportion in which he shall have paid for the same.''

The contract contains the further provision:

''It is further known to said Hollenbach and Gamble that all of the stock, common and preferred, herein contracted to be sold and transferred to Phil Hollenbach, was originally issued by the Watterson Realty Company to Sam P. Jones and the major portion thereof now stands in the name of Sam P. Jones, and his wife and said parties join in this agreement and bind themselves to its terms and provisions.''

The concluding clause is as follows:

''This agreement and contract shall take effect immediately between said James E. Gamble and Phil Hollenbach, as soon as matters are settled by Phil Hollenbach, Sam P. Jones, Mrs. Sam Jones and others above named, to the satisfaction of said Gamble and said Hollenbach.''

A supplemental contract was signed on April 28, 1913, which was made a part of the original contract. One of the provisions of this contract was as follows:

"Witnesseth: That whereas said parties with Sam P. Jones and wife have prepared for signature a contract of even date herewith in triplicate for the sale by said Gamble to said Hollenbach of 1250 shares, or $125,000.00 of the common stock, 1225 shares, or $122,500.00 of the preferred stock and $95,000.00 of the second mortgage bonds of the Watterson Realty Company for the consideration therein set forth in said contract, which is hereby made part hereof."

Another provision was:

"Now this agreement and contract between said James E. Gamble and said Phil Hollenbach, as an addition to and modification of said contract of even date herewith, witnesseth that the said Gamble for himself, his heirs, personal representatives and assigns, warrants, guarantees and covenants to and with said Phil Hollenbach, his heirs, personal representatives and assigns that all of the common and preferred stock and second mortgage bonds which by said contract of even date herewith are sold and agreed to be sold and delivered by said Gamble to said Phil Hollenbach and each and every share and bond thereof is and are, one and all, genuine, valid and lawful obligations, bonds, and stock, common and preferred, of the Watterson Realty Company and free from any lien, privilege or encumbrance and that the issue of the same and every share and bond thereof is lawful and valid and that the assignments and transfers thereof and of every share and bond thereof to said Phil Hollenbach are and forever shall be valid and legal and pass and convey to and vest in said Phil Hollenbach a good, absolute and valid legal title to the same and every share and bond thereof, and that said Gamble and his heirs, personal representatives and assigns, shall forever, at his and their own proper expense and labor, forever warrant and defend the lawful and absolute ownership, right and title of said Phil Hollenbach to the same and every bond and share thereof to said Phil Hollenbach and his heirs, personal representatives and assigns forever."

The argument in behalf of Gamble proceeds along the following lines: The words, "will sell and deliver," "the amount to be sold and delivered," "are to be sold to Hollenbach," "Gamble's agreement to sell and deliver the same," "so that the said Gamble shall sell and deliver," considered in connection with the fact that

the bonds were to be delivered in the future and were not to be delivered until paid for, show that the parties contemplated a future, and not a present sale of the bonds.

It must not be overlooked that the expressions above referred to are not the only ones bearing on the question. By clause 6 Hollenbach "agrees that all the bonds and stocks sold to him shall be deposited with the Fidelity & Columbia Trust Company as collateral to secure the said payments heretofore agreed to be made to him, but to be delivered from time to time in the proportion in which he shall have paid for the same." By the supplemental contract, which was made part of the original contract, Gamble guaranteed the genuineness and validity of all the common and preferred stock and second mortgage bonds, which "by the said contract of even date herewith are sold and agreed to be sold and delivered by said Gamble to said Phil Hollenbach." Gamble further covenanted that the "assignments and transfers thereof and of every share and bond thereof to said Phil Hollenbach are and forever shall be valid and legal and pass and convey to, and vest in, said Phil Hollenbach a good, absolute and valid legal title to the same and every share and bond thereof." Not only so, but clause 3 provided that "all of said Gamble's stock and second mortgage bonds are to be deposited with the Fidelity & Columbia Trust Company as trustee before any payment shall be made on said stock and bonds to be held as security for the fulfillment of said Gamble's agreement to sell and deliver the same, and shall be delivered as paid for, in accordance with this agreement." Moreover, it was provided that the "contract shall take effect immediately between said James E. Gamble and Phil Hollenbach, as soon as matters are settled by Phil Hollenbach, Sam Jones, Mrs. Sam Jones and others above named to the satisfaction of said Gamble and said Hollenbach." Whether the title passes by contract of sale is always a question of intention, and the fact that the property is not to be delivered until paid for is not conclusive. While the question is not altogether free from doubt, the following circumstances convince us that a present sale was contemplated. In the first place, the stock and bonds were to be deposited with the trust company before Hollenbach made any payment, and the first payment was to be made on May 10th,

which was before the May coupons matured. While this provision of the contract was afterwards waived by Hollenbach in order to accommodate Gamble, that fact does not affect the question. By the provision referred to the parties evidently intended that the control of the bonds should pass from Gamble, in which event it would not be possible for him to clip the coupons. Furthermore, if it was intended by the parties that the title to the bonds should not pass until they were paid for, it is impossible to give any effect to the provision that the contract "shall take effect, immediately, and as soon as matters are settled by Phil Hollenbach, Sam Jones, Mrs. Sam Jones and others above mentioned, to the satisfaction of said Gamble and said Hollenbach." Since a contract becomes binding when it is signed by the parties, it is clear that this is not what Gamble and Hollenbach contemplated. They meant that it should take effect not merely for the purpose of becoming binding, but for the purpose of vesting title in Hollenbach. This view of the contract harmonizes with the use of the future tense as applied to the sale. In other words, when Gamble agreed that he would sell the bonds, it meant that he would sell them by the contract which he then signed, and that the sale would take effect whenever the contract itself took effect. This construction finds further support in Hollenbach's agreement that there should be deposited with the Fidelity & Columbia Trust Company "all the bonds and stock sold to him," and by his covenant as to the genuineness and validity of the second mortgage bonds, which "by the said contract of even date herewith are sold and agreed to be sold and delivered by said Gamble to said Phil Hollenbach." As the contract was to take effect immediately and as soon as matters were settled by the parties to their satisfaction, and as these matters were settled before the May coupons became due, the title to the bonds then passed to Hollenbach, together with the attached coupons. It follows that the chancellor did not err in so holding.

We see no reason to disturb the chancellor's finding that the eleven coupons of November, 1913, were not delivered to Hollenbach.

Judgment affirmed.